UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| | : |
| | : CRIMINAL NO. 1:15-CR-305 |
| v. | : |
| | : |
| JAMAR L. MCMILLAN, | : |
| Defendant | : |

*M E M O R A N D U M*

*I.     Introduction*

Before this Court is Defendant Jamar McMillan's motion to suppress. (Doc. 32). Defendant challenges a search of his person incident to arrest, and a search of his girlfriend's vehicle. (Doc. 33 at 5). We will deny Defendant's motion.

*II.    Background*

We gather the following facts from the parties' briefing and the exhibits attached thereto. (Docs. 47 & 48). On July 30, 2015, an internal email sent within the Harrisburg Police Department (HPD) indicated that Defendant was a person of interest in an arson investigation, that he made "his living by dealing drugs," that he had an active bench (capias) warrant from June 2013 for his arrest, and that "[h]e drives his girlfriend's vehicles which are a black Lexus and a white Jeep Cherokee."  (Doc 48 at 7; Doc. 48-1 at 2, 4-10). The email requested officers of HPD's Vice Unit to target Defendant for controlled buys because they wanted "him to be facing some delivery charges." (Doc. 48-1 at 2). On August 12, 2015, HPD Vice Unit Detective Nicholas Licata surveilled 159 South 18th Street as a possible residence where Defendant was located. (Doc. 48 at 8). Licata observed a black Lexus and a white Jeep Cherokee outside of the residence, which

1

were registered to Defendant's girlfriend. (Id.) Licata also observed a man, appearing to be Defendant, exit the residence, enter the Lexus, and re-enter the residence. (Id.) Licata did not approach or arrest Defendant that day. (Id.)

Two days later, after confirming that the arrest warrant for Defendant was still active, Licata and fellow HPD Detective Donald Heffner set up surveillance outside the same residence, this time with assistance from officers of Dauphin County Probation and the United States Marshal's Office. (Id.) Licata and Heffner observed the two vehicles outside the residence, and watched Defendant and another man exit the residence. (Id. at 9). Defendant opened the trunk of the Lexus and removed two car seats, which he handed to the other man. (Id.) Defendant then leaned into the driver's seat of the Lexus and appeared to move items near the vehicle's center console. (Id.)

Assisting officers began to approach the men, and the man accompanying Defendant fled. (Doc. 48 at 9). Law enforcement then approached Defendant, who closed the door to the Lexus and ran into an alley, where he was "taken to the ground and arrested pursuant to the warrant." (Id. at 9-10). Licata performed a search incident to arrest of Defendant, which revealed keys to the Lexus, a vial of suspected PCP, forty-two packets of heroin, and a bag of synthetic marijuana. (Id. at 10). Licata then searched the Lexus and found a loaded, black .45 caliber pistol inside a "craftsman soft pouch" near the driver's seat. (Id. at 10-11). Inside the trunk, Licata also found a bag of marijuana. (Id. at 11). Defendant was arrested, and, after being Mirandized, admitted that the drugs were his, but denied knowledge or possession of the firearm. (Id.)

On December 16, 2015, Defendant was charged with possession with intent to distribute heroin, 21 U.S.C. §§ 841(a)(1), (b)(1)(C) (Count One); possession of a firearm

2

in furtherance of drug trafficking, 18 U.S.C. § 924(c)(1)(A) (Count Two); and possession of a firearm by a convicted felon, 18 U.S.C. § 922(g) (Count Three). (Doc 1 at 1-3). On June 6, 2016, Defendant filed the instant motion to suppress. (Doc. 32). He argues that the search incident to arrest was unlawful, that police should have obtained a warrant prior to searching the Lexus, and that his subsequent statements to police were fruit of the poisonous tree.[1] (Doc. 47 at 3-5). The Government argues that the arrest and the search incident thereto were proper, that Defendant lacks standing to object to the search of the Lexus, and that, even if he has standing, police had probable cause under the automobile exception to search the Lexus without a warrant. (Doc. 48 at 13, 18, 20).

III.     *Discussion*

As an initial matter, it is well established that, upon executing an arrest pursuant to a valid arrest warrant, law enforcement may conduct a search of an individual incident to that arrest for the officers' safety and to preserve evidence. See Utah v. Strieff, 136 S. Ct. 2056, 2062 (2016). Accordingly, we reject Defendant's arguments that his arrest was improper, and find that the arrest pursuant to an outstanding warrant, and the search incident thereto, were permissible. Moreover, because Defendant was not illegally seized, was read his Miranda rights, and does not claim that his statements to police were involuntary, we deny Defendant's motion with respect to his subsequent statements to police. See United States v. Schettler, 32 F. App'x 14, 15 (3d Cir. 2002).

Next, we turn to the officers' search of Defendant's girlfriend's Lexus, and the Government's contention that Defendant lacks standing to challenge the search.

---

[1] We do not address Defendant's other arguments, which are not appropriate suppression issues. (Doc. 47 at 3-5). Not only has the Government provided ample proof that the outstanding arrest warrant was valid, (Doc. 48-1 at 3-10), but the search incident to arrest evidence would not be excluded even if the warrant were defective, so long as police acted in good faith reliance on the warrant. See Herring v. United States, 555 U.S. 135, 147 (2009).

3

Although the right to challenge a search on Fourth Amendment grounds is generally referred to as "standing," the Supreme Court has clarified that the right "is more properly placed within the purview of substantive Fourth Amendment law than within that of standing." Rakas v. Illinois, 439 U.S. 128, 140 (1978). Courts "use the term 'standing' as shorthand for determining whether a litigant's Fourth Amendment rights are implicated." United States v. Katzin, 769 F.3d 163, 197 n.6 (3d Cir. 2014), cert. denied, 135 S. Ct. 1448 (2015). "Fourth Amendment standing 'requires that the individual challenging the search have a reasonable expectation of privacy in the property searched . . . and that he manifest a subjective expectation of privacy in the property searched[.]'" United States v. Kennedy, 638 F.3d 159, 163 (3d Cir. 2011) (quoting United States v. Baker, 221 F.3d 438, 441 (3d Cir. 2000)). "[O]ne who owns or lawfully possesses or controls property will in all likelihood have a legitimate expectation of privacy by virtue of [a] right to exclude." Rakas, 439 U.S. at 143 n.12. "Fourth Amendment rights are personal rights, and a search of a car does not implicate the rights of non-owner passengers: the car is treated conceptually like a large piece of clothing worn by the driver." Kennedy, 638 F.3d at 163.

      In Kennedy, the Third Circuit, in conducting a fact-based inquiry on the issue of standing, held that "as a general rule, the driver of a rental car who has been [l]ent the car by the renter, but who is not listed on the rental agreement as an authorized driver, lacks a legitimate expectation of privacy in the car unless there exist extraordinary circumstances suggesting an expectation of privacy." Id. at 165. In that case, the Defendant-driver had permission to use a car that was rented by his girlfriend. Id. at 160-61. Relying on notions of property law and ownership, the Third Circuit noted that Defendant did not have permission to drive the rental car from its owner—the rental car

company—and therefore "any expectation of privacy he subjectively held in the vehicle was therefore objectively unreasonable." Id. at 168. The court distinguished its prior decision in Baker, where it held that a defendant had standing to challenge the search of a vehicle that was lent to him by his owner-friend. Id. at 164 (citing Baker, 221 F.3d at 442-43). The court reasoned that "Baker stands for the proposition that, in conducting the 'fact-bound' inquiry into whether a driver has a legitimate expectation of privacy in a car, a person who lawfully borrows a car from another and exercises substantial control over it may well have a legitimate expectation of privacy" to challenge its search. Id.

Here, we find that the facts of this case align with the court's opinion in Baker, and therefore Defendant has standing to challenge the search of his girlfriend's Lexus. It is undisputed that the registered owner of the Lexus was Defendant's girlfriend, and it was known to police that Defendant typically drove her vehicles. In fact, the internal police email that sparked the investigation into Defendant stated: "[Defendant] drives his girlfriend's vehicles which are a black Lexus and a white Jeep Cherokee." (Doc. 48-1 at 2). On both days that police surveilled the girlfriend's residence, Defendant was twice seen possessing the key to, and entering, the Lexus; there is no indication that he did not have permission from his girlfriend to use the vehicle. (Doc. 48 at 8-9). Moreover, immediately before executing the arrest warrant, police saw Defendant open the trunk to the Lexus, remove car seats from the vehicle, and then enter the driver's side door where he moved items near the center console. (Id. at 9). When Defendant was arrested, the keys to the Lexus were in his possession. (Id. at 10). These facts amply support a finding that Defendant was lawfully exercising substantial control over the vehicle, thereby creating a "legitimate expectation of privacy." See Kennedy, 638 F.3d at 164; see also

United States v. Hawkins, 646 F. App'x 254, 256 (3d Cir. 2016) (assuming that defendant who helped purchase girlfriend's Jeep and had a key to use it had standing). As such, Defendant has standing to challenge the search of his girlfriend's vehicle.

We turn now to the issue of whether the search was permissible under the Fourth Amendment.[2] Defendant argues that that police should have obtained a warrant before searching the Lexus. (Doc. 47 at 3). The Government contends that the search fell within the automobile exception to the warrant requirement and was valid because police had probable cause to search.[3] (Doc. 48 at 20).

"The automobile exception to the warrant requirement permits law enforcement to seize and search an automobile without a warrant if 'probable cause exists to believe it contains contraband.'" United States v. Burton, 288 F.3d 91, 100 (3d Cir. 2002) (quoting Pennsylvania v. Labron, 518 U.S. 938, 940 (1996)); see also United States v. Donahue, 764 F.3d 293, 299–300 (3d Cir.2014). "While a seizure or search of property without a warrant ordinarily requires a showing of both probable cause and exigent circumstances, the 'ready mobility' of automobiles permits [a] search based only on probable cause." Burton, 288 F.3d at 100 (citing Maryland v. Dyson, 527 U.S. 465, 466–67 (1999)). If probable cause justifies the search of a vehicle, it justifies the search of every part of the vehicle that may conceal the object of the search. Donahue, 764 F.3d at

---

[2] Defendant's challenge to the search under Pennsylvania's Constitution, (Doc. 47 at 5), is irrelevant to our analysis. See United States v. Holloway, 489 F. App'x 591, 593 (3d Cir. 2012).

[3] The Government also contends that there were exigent circumstances in this case because, if "police had . . . left the car un-touched, there is a strong likelihood that [Defendant's] associate would have returned and destroyed any evidence located within the vehicle." (Doc. 48 at 23). This argument is unsupported by the record and based on conjecture. The record provides no support for whether Defendant's associate was engaged in criminal activity with Defendant, or knew of the drugs he possessed or the firearm in the Lexus. Moreover, following Defendant's arrest, police also had the keys to the car and could lock and monitor the vehicle.

6

300. Probable cause to search requires a totality of the circumstances inquiry to determine whether there is a "fair probability that contraband or evidence of a crime will be found in a particular place." Burton, 288 F.3d at 103 (quoting Illinois v. Gates, 462 U.S. 213, 238 (1983)).

Here, we find that, under the totality of the circumstances, police had probable cause to believe there was contraband in the vehicle.  Although Defendant was a person of interest to police in an arson investigation, the internal police email that sparked surveillance of Defendant stated that he made "his living by dealing drugs." (Doc. 48-1 at 2).  Police observed Defendant moving things around in the Lexus.  When they approached him to execute the arrest warrant, Defendant closed the door to the car and fled, elevating suspicion of wrongdoing.  See United States v. Laville, 480 F.3d 187, 195 (3d Cir. 2007); (Doc. 48 at 10).  After arresting Defendant, police found that he possessed forty-two packets of heroin, a vial of PCP, and a bag of synthetic marijuana.  (Doc. 48 at 10).  Although police did not see Defendant engage in criminal activity, the close temporal link between police observing Defendant in the vehicle, Defendant's flight therefrom, and the contraband found on his person immediately thereafter, when taken together with the suggestion that Defendant may have made a living by dealing drugs, provided probable cause for police to believe that there was contraband in the vehicle.  See  United States v. Jones, 994 F.2d 1051, 1055-56 (3d Cir.1993) ("If there is probable cause to believe that someone committed a crime, then the likelihood that that person's [vehicle] contains evidence of the crime increases."); see also Burton, 288 F.3d at 104 ("[D]irect evidence linking the [vehicle] to criminal activity is not required to establish probable cause.").

Moreover, the fact that the Lexus was parked outside the residence,[4] and that police had its keys, does not preclude a warrantless search under the automobile exception. See United States v. Mooty, 96 F. Supp. 3d 472, 492 (E.D. Pa. 2015) (applying automobile exception even where vehicle was at dealership and not readily mobile because the vehicle "retained its inherently mobile character"). As such, we conclude that police had probable cause to justify a search of Defendant's girlfriend's vehicle under the automobile exception to the warrant requirement.

*IV.     Conclusion*

Defendant's motion to suppress will be denied and an appropriate order will issue.

/s/ William W. Caldwell
William W. Caldwell
United States District Judge

Date: November 21, 2016

---

[4] It also does not appear that police needed to enter private property to search the Lexus, which seems to have been parked on the street outside the residence and not in a driveway. See United States v. Bentley, 528 F. App'x 247, 251 (3d Cir. 2013) (noting that vehicle was parked on side of road, and therefore "police did not need to enter private property in order to search the vehicle"); United States v. Goncalves, 642 F.3d 245, 251 (1st Cir. 2011) (noting circuit courts permitting searches of vehicles in private driveways that were not the defendant's residence).