**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. 1:15-CR-305** |
| | : | |
| **v.** | : | **(Judge Conner)** |
| | : | |
| **JAMAR LYNN MCMILLAN,** | : | |
| | : | |
| **Defendant** | : | |

**<u>MEMORANDUM</u>**

The court sentenced defendant Jamar Lynn McMillan to 240 months' imprisonment after a jury found him guilty of drug trafficking and firearm offenses. He now moves *pro se* to vacate or set aside his sentence pursuant to 28 U.S.C. § 2255, alleging trial and appellate counsel ineffectiveness and raising other constitutional issues.[1]  We will deny McMillan's motion.

I.  **<u>Factual and Procedural History</u>**

A.  **Indictments and Pretrial Proceedings**

In December 2015, a federal grand jury returned a three-count indictment charging McMillan with possession with intent to distribute heroin in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C), possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c), and possession of a firearm as a felon in violation of 18 U.S.C. § 922(g).  (See Doc. 1).  The court appointed Wendy J.

---

[1] We note that courts have a duty to "liberally construe *pro se* filings with an eye toward their substance rather than their form."  <u>See</u> <u>United States v. Delgado</u>, 363 F. App'x 853, 855 (3d Cir. 2010) (nonprecedential) (citing <u>United States v. Miller</u>, 197 F.3d 644, 648 (3d Cir. 1999)).

F. Grella, Esquire to represent him.  (See Doc. 9).  McMillan made his first appearance on January 7, 2016, and pled not guilty to all charges.  (See Doc. 10).

Attorney Grella filed a motion to suppress statements and evidence collected during McMillan's arrest, arguing police lacked probable cause for the arrest and subsequent search of the vehicle used by McMillan, which was owned by Dyneisha Gamble—the mother of his children.  (See Doc. 32 at 2-7; Doc. 47 at 3-6).  The Honorable William W. Caldwell denied the motion, finding (1) McMillan was arrested pursuant to a valid warrant, (see Doc. 53 at 3); (2) police read him his Miranda rights, (see id.); and (3) they had probable cause to believe there was contraband in the vehicle, (see id. at 7).  In December 2016, a federal grand jury returned a five-count superseding indictment against McMillan, charging him with the same three offenses and two additional counts of possession with intent to distribute controlled substances, specifically, phencyclidine ("PCP") and AB-CHIMINACA, a synthetic cannabinoid.  (See Doc. 57).  McMillan again pled not guilty to all charges.  (See Doc. 67).

Both parties agreed to—and the court granted—a total of 14 trial continuances throughout pretrial proceedings.  (See Docs. 24, 29, 36, 41, 44, 56, 65, 69, 71, 73, 75, 77, 80, 85).[2]  The government also made three plea offers to McMillan, each of which he rejected.  (See Doc. 148, 2/26/18 Pre-Trial Conf. Tr. 10:13-11:21, 16:19-18:8; Doc. 149, 2/27/18 Trial Tr. 87:23-89:18).  A date-certain trial was set for February 27, 2018.  (See Doc. 85).  At the pretrial conference the day before trial, the

---

[2] This matter was reassigned to the undersigned for trial in January 2018.

court addressed McMillan's request to replace Attorney Grella during an *ex parte* hearing.  (See 2/26/18 Pre-Trial Conf. Tr. 3:22-30:14).  McMillan argued there was a conflict of interest because he filed a bar complaint against Attorney Grella, (see id. at 7:18-21, 13:6-12), and he suggested attorney-client communications had completely broken down because Attorney Grella failed to adequately explain the plea offers to him or to file all the motions he requested, (see id. at 8:2-12:19, 13:25-14:10, 15:15-21).  The court colloquied both McMillan and Attorney Grella and determined McMillan lacked good cause to replace her.  (See id. at 26:8-27:13).  The court also found that McMillan "unequivocally represent[ed] a desire to have Ms. Grella continue to represent [him]" rather than proceed *pro se*—and he did not object to that finding.  (See id. at 29:9-30:13).

## B.    Trial[3]

The evidence against McMillan at trial was overwhelming.  The government presented testimony from law enforcement officers about McMillan's arrest, the drugs found on his person, and the gun and mask found in a pouch in Gamble's vehicle.  (See 2/27/18 Trial Tr. 104:18-115:13, 120:24-121:15).  This was corroborated by DNA evidence matching McMillan's DNA to DNA found on the gun and mask, and forensic evidence identifying the drugs seized during his arrest as the controlled substances alleged in the superseding indictment.  (See Doc. 150, 2/28/18 Trial Tr. 46:17-51:5, 74:1-2, 75:24-25, 77:9).  Investigating officers analyzed

---

[3] The court conducted a bifurcated trial as to McMillan's Section 922(g) charge.  (See Doc. 151, 3/1/18 Trial Tr. 90:19-92:1; see also 2/26/18 Pre-Trial Conf. Tr. 2:5-3:2).

McMillan's cell phone and testified about his references to drugs during text message conversations. (See id. at 93:21-22, 98:15, 99:13-16). Other evidence included recorded phone calls of McMillan while he was in prison, during which he referenced drugs and made a statement about "my mask and everything with the gun." (See id. at 131:18-19, 141:11-12). The government also presented evidence of McMillan's two prior drug-distribution convictions, and the court provided an appropriate limiting instruction to the jury. (See id. at 171:11-13, 172:20-21, 175:6-176:6).

After the government rested, the court, outside the presence of the jury and at Attorney Grella's request, addressed McMillan's right to testify. (See id. at 178:7-179-12). The court explained to McMillan, *inter alia*, "you have the right to testify on your own behalf. It is a decision that is solely yours to make. You control that decision . . . ." (See id. at 179:8-10). Attorney Grella then engaged in a colloquy with McMillan, during which he confirmed on the record he was happy with her representation thus far, he did not want to testify, and he did not have any questions or concerns for the court regarding his right to testify. (See id. at 181:9-19). Attorney Grella told the court she did not have any witnesses, asked for the admission of one exhibit, and moved for judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29. (See id. at 182:1-19). She argued the motion should be granted because the government had not established that McMillan intended to distribute the drugs or that the firearm had been used in furtherance of a drug-trafficking offense. (See 2/28/18 Trial Tr. 182:24-185:1). The court denied the motion, referencing testimony and exhibits supporting the government's charges

4

and emphasizing "the record is replete with evidence" of McMillan's intent to distribute drugs.  (See id. at 187:3-25).  The jury returned a verdict of guilty on all five counts.  (See Docs. 122, 124).

## C.    Sentencing and Appeal

The United States Probation Office prepared a presentence investigation report and classified McMillan as a career offender with a criminal history category of VI.  (See Doc. 131 ¶¶ 31, 56).  The report listed his adjusted total offense level as 32, resulting in a guidelines range of 360 months' imprisonment to life.  (See id. ¶ 35).  At sentencing, Attorney Grella noted McMillan's objection to the career offender enhancement, which the court overruled.  (See Doc. 152, 9/21/18 Sentencing Tr. 2:22-4:17).  The court ultimately varied downward and sentenced McMillan to 240 months' imprisonment, accounting for his disadvantaged upbringing, history of substance abuse, and the low-level drug convictions underpinning his status as a career offender.  (See id. at 22:14-25:4).

Attorney Grella timely filed a notice of appeal on McMillan's behalf and then moved to withdraw; the court appointed Attorney Frederick W. Ulrich of the Federal Public Defenders Office as successor counsel.  (See Docs. 144-147). Attorney Ulrich filed an appeal challenging the warrantless search of the vehicle incident to McMillan's arrest and McMillan's classification as a career offender.  See United States v. McMillan, No. 18-3165, 1/4/19 Brief of Appellant.  Our court of appeals affirmed McMillan's conviction and sentence, see United States v. McMillan, 774 F. App'x 768, 772 (3d Cir. 2019), but the United States Supreme Court granted certiorari, vacated the judgment, and remanded the case with instructions

to reconsider McMillan's Section 922(g) conviction in light of <u>Rehaif v. United States</u>, 588 U.S. ___, 139 S. Ct. 2191 (2019),[4] <u>see</u> <u>McMillan v. United States</u>, 140 S. Ct. 1259, 1260 (2020).  The Supreme Court did not otherwise address the merits of McMillan's arguments.  On remand, our court of appeals reaffirmed McMillan's conviction and sentence, holding that the <u>Rehaif</u> error was harmless and did not affect McMillan's substantial rights because the jury heard sufficient evidence demonstrating he knew he was a felon when he possessed the firearm.  <u>See</u> <u>United States v. McMillan</u>, 849 F. App'x 27, 28-30 (3d Cir. 2021).

### D.    Section 2255 Motion

McMillan thereafter moved *pro se* pursuant to 28 U.S.C. § 2255 to vacate or set aside his conviction.  (<u>See</u> Doc. 162).  He raises numerous grounds for relief in his motion, many of which are unsupported by citations to the record or caselaw. (<u>See</u> Doc. 162-1 at 22-25).  McMillan also references a forthcoming "Memorandum of Law" at various points in the motion, (<u>see, e.g.</u>, Doc. 162-1 at 19, 23, 24), but failed to file additional documents or evidence supporting his motion even after the court extended the deadline, (<u>see</u> Doc. 165).  The motion is fully briefed and ripe for disposition.

## II.    <u>Legal Standards</u>

Under 28 U.S.C. § 2255, a federal prisoner may move the sentencing court to vacate, set aside, or correct his sentence.  28 U.S.C. § 2255.  Courts may afford relief

---

[4] The Court in <u>Rehaif</u> held that a Section 922(g) conviction requires the government to prove the defendant "knew he had the relevant status [as a felon] when he possessed" the firearm.  <u>See</u> <u>Rehaif</u>, 139 S. Ct. at 2194.

under Section 2255 on a number of grounds including, *inter alia*, "that the sentence was imposed in violation of the Constitution or the laws of the United States." See 28 U.S.C. § 2255(a); see also 28 U.S.C. § 2255 Rule 1(a).  The statute provides that, as a remedy for an unlawfully imposed sentence, "the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." See 28 U.S.C. § 2255(b). The court accepts the truth of the defendant's allegations when reviewing a Section 2255 motion unless those allegations are "clearly frivolous based on the existing record." See United States v. Booth, 432 F.3d 542, 545 (3d Cir. 2005).  A court is required to hold an evidentiary hearing when the motion "allege[s] any facts warranting § 2255 relief that are not clearly resolved by the record." See United States v. Tolliver, 800 F.3d 138, 141 (3d Cir. 2015) (quoting Booth, 432 F.3d at 546).

A collateral attack based on ineffective assistance of counsel is governed by the two-pronged test set forth in Strickland v. Washington, 466 U.S. 668 (1984).  To prevail on such a claim, a defendant must demonstrate (1) counsel's representation fell below an objective level of reasonableness based on prevailing professional norms, and (2) the deficient representation was prejudicial.  See Strickland, 466 U.S. at 687-88.  The defendant bears the burden of proving both prongs.  See id. at 687.  To determine whether counsel has satisfied the objective standard of reasonableness under the first prong, courts must be "highly deferential" toward counsel's conduct.  See id. at 689.  There is a strong presumption that counsel's performance falls within the broad range of reasonable professional assistance.  See United States v. Gray, 878 F.2d 702, 710 (3d Cir. 1989).  Only a "rare claim" of

ineffectiveness of counsel should succeed "under the properly deferential standard to be applied in scrutinizing counsel's performance." Id. at 711 (citing Strickland, 466 U.S. at 689-90). To satisfy the prejudice prong, the defendant must establish a reasonable probability that, but for counsel's errors, the outcome of the proceeding "would have been different." See Strickland, 466 U.S. at 694. The district court need not conduct its analysis of the two prongs in a particular order or even address both prongs of the inquiry if the defendant makes an insufficient showing in one. See id. at 697; United States v. Lilly, 536 F.3d 190, 196 (3d Cir. 2008).

III.   **Discussion**

McMillan's Section 2255 motion raises 14 grounds for relief; eight involve claims of ineffective assistance of counsel, (Counts I-IV and VI-IX), and six are based on alleged constitutional issues, (Counts V and X-XIV). (See Doc. 162-1 at 1-26). McMillan has completely failed to develop eight of these claims, (Counts VI-XIII), by not citing to supporting evidence or pertinent legal authority. (See id. at 22-25); see also United States v. Thomas, 221 F.3d 430, 437 (3d Cir. 2000) ("[V]ague and conclusory allegations contained in a § 2255 petition may be disposed of without further investigation by the District Court.") (citing United States v. Dawson, 857 F.2d 923, 928 (3d Cir. 1998)). Nevertheless, each of his claims is refuted by the factual record and is meritless. We will address these claims *seriatim*.

A.   **Pretrial Investigation and Potential Witnesses (Counts I and XII)**

McMillan alleges Attorney Grella conducted an inadequate pretrial investigation and failed to call three key witnesses at trial. (See Doc. 162-1 at 1-5).

Defense counsel generally has a duty to independently investigate the facts of a case and interview potential witnesses. See United States v. Kauffman, 109 F.3d 186, 190 (3d Cir. 1997) (citations omitted). McMillan asserts that if Attorney Grella had performed a more robust investigation she would have discovered that two of his aunts were willing to testify about his history of drug abuse, bolstering his defense that the drugs found during his arrest were for personal use. (See Doc. 162-1 at 1-2). McMillan also claims Gamble—the owner of the home where he was arrested and the mother of his children—would have testified that she saw another man place the concealed gun into her vehicle without McMillan's knowledge. (See id. at 2). He avers these three individuals desired to testify but Attorney Grella denied their requests. (See id. at 2-3). McMillan also contends Attorney Grella's conduct was ineffective because she failed to admit detox records into evidence, which would have shown he was a drug user (not a drug dealer) at the time of his arrest. (See id. at 5).

The record demonstrates Attorney Grella investigated McMillan's case, subpoenaed potential witnesses, and made a reasoned decision—endorsed by McMillan—not to call his family members as witnesses. (See 2/27/18 Trial Tr. 92:3-13). Attorney Grella informed the court at the start of trial she would not be calling McMillan's family members as witnesses, noting:

> I have spoken with all the witnesses that I had under subpoena as far as family members go. I've also spoken with Mr. McMillan. At this point everybody is in agreement that they are not going to be testifying on his behalf.

(See id.)  Attorney Grella also attempted to call a witness to authenticate records showing McMillan participated in a drug detox program after his arrest.  (See 2/28/18 Trial Tr. 189:5-11).  However, the potential witness notified Attorney Grella they were unable to testify to that fact because no records existed with the correct spelling of McMillan's name.  (See 3/1/18 Trial Tr. 3:3-21).  The government also refused to stipulate to McMillan's participation in a drug detox program, (see id. at 4:8-13), and the court did not permit Attorney Grella additional time to investigate the issue, which would have delayed trial, (see id. at 4:14-23).

Assuming *arguendo* Attorney Grella was ineffective for failing to obtain the drug detox records before trial, these claims still fail because McMillan cannot show prejudice.  The court noted at trial that the record was "replete with evidence" establishing McMillan's intent to distribute controlled substances, and we referenced various pieces of evidence supporting the Section 924(c) count.  (See 2/28/18 Trial Tr. 187:8-23).  The evidence included: the significant quantity of drugs seized, (see 2/27/18 Trial Tr. 113:13-24); multiple drug references found on his cell phone, (see 2/28/18 Trial Tr. 93:14-94:7, 98:12-99:16); recorded phone calls containing McMillan's references to drugs, money, and "my mask and everything with the gun," (see id. at 140:22-142:10); the presence of his DNA on the gun and mask, (see id. at 46:17-51:5, 59:6-10); and proof of McMillan's prior convictions for drug trafficking, (see id. at 170:14-173:1).  Given the overwhelming weight of this evidence, McMillan cannot demonstrate that any additional pretrial investigation would have resulted in a reasonable probability that, but for counsel's alleged

errors, the outcome of the proceeding "would have been different." <u>See</u> <u>Strickland</u>,

466 U.S. at 694.

### B.    McMillan's Right to Testify at Trial (Count II)

McMillan also contends Attorney Grella was ineffective because she failed to

advise him of his right to testify and refused to let him exercise that right.  (<u>See</u> Doc.

162-1 at 6-10).  A defendant's right to testify "is personal and thus only the

defendant may waive it."  <u>See</u> <u>United States v. Pennycooke</u>, 65 F.3d 9, 10-11 (3d Cir.

1995) (citations omitted).  Defense counsel is tasked with advising their client of the

right to testify and "ensuring that any waiver is knowing and intelligent." <u>See</u> <u>id.</u> at

13.  The record demonstrates McMillan knowingly waived his right to testify,

therefore his allegations are clearly frivolous.

The court explained to McMillan during an *ex parte* colloquy at the pretrial

conference that he has the "absolute final right . . . to decide whether or not to

testify on [his] own behalf."  (<u>See</u> 2/26/18 Pre-Trial Conf. Tr. 24:14-18).  McMillan

responded by coherently reiterating his request for new counsel, but he did not

express any confusion about his right to testify.  (<u>See</u> <u>id.</u> at 28:18-29:22).  The court

found McMillan capable of acting knowingly, voluntarily, and intelligently at that

time.  (<u>See</u> <u>id.</u> at 27:18-28:17).  After the government rested its case-in-chief at trial

two days later, Attorney Grella asked the court to excuse the jury so she could

colloquy McMillan on his right to testify.  (<u>See</u> 2/28/18 Trial Tr. 178:7-14).  The court

granted Attorney Grella's request and reminded McMillan, "[Y]ou have the right to

testify on your own behalf.  It is a decision that is solely yours to make.  You control

that decision, and it's a matter that I understand that you have spoken with your

attorney about."  (<u>See</u> <u>id.</u> at 178:15-6, 179:8-12).  Attorney Grella then engaged in the

following colloquy with McMillan:

| | |
|---|---|
| ATTORNEY GRELLA: | Okay.  Are you currently under the influence of any drugs or alcohol. |
| THE DEFENDANT: | No.[5] |
| . . . | |
| ATTORNEY GRELLA: | And you and I have spoken numerous times at Dauphin County prison, is that correct? |
| THE DEFENDANT: | Yes. |
| ATTORNEY GRELLA: | And we talked before about whether or not you should testify with regard to your case? |
| THE DEFENDANT: | Yes. |
| ATTORNEY GRELLA: | Okay, and you understand that no matter what advice I give to you, the ultimate decision is yours and yours alone to make, whether I agree or disagree with you, that is your right and your right alone.  Do you understand that? |
| THE DEFENDANT: | Yes. |
| ATTORNEY GRELLA: | Okay.  And we've discussed the pros and cons of your testifying? |
| THE DEFENDANT: | Yes. |

---

[5] McMillan now claims *he was* under the influence of psychotic medication (and suffering from medical disorders) during this colloquy and answered "No" because he thought Attorney Grella was only referring to illegal drugs.  (<u>See</u> Doc. 162-1 at 8).  But McMillan has not provided any evidence supporting this bald contention, nor has he explained how any medication he might have been taking interfered with his decision-making at the time.  Moreover, the court did not observe McMillan behave or speak in any manner indicating a lack of self-command. Accordingly, we find this claim to be meritless.

ATTORNEY GRELLA:   And have you made a decision ultimately regarding -- well, before I get to that, are you happy with my representation so far during trial?

THE DEFENDANT:   Yes.

ATTORNEY GRELLA:   Okay.  Have you made the decision whether or not you want to testify regarding this case?

THE DEFENDANT:   At this time I choose not to.

ATTORNEY GRELLA:   Okay.  Do you have any questions or concerns regarding your decision that you want to address with the court before the judge accepts your declining to testify?

THE DEFENDANT:   No.

(See id. at 180:20-181:19).

McMillan now contends that, when he stated "*at this time* I choose not to," he believed Attorney Grella would give him another opportunity to testify, specifically "that all the drugs [he] possessed w[ere] for personal use only." (See Doc. 162-1 at 8-9) (emphasis added).  He asserts that on the third day of trial he asked her "to put me on the stand," but she ignored him. (See id. at 9-10).[6]  His arguments are

---

[6] McMillan also suggests the court "never accepted any waiver of the right to testify." (See Doc. 162-1 at 9).  It is well-settled that, "[w]here the trial court has no reason to believe that the defendant's own attorney is frustrating his or her desire to testify, a trial court has no affirmative duty to advise the defendant of the right to testify or to obtain an on-the-record waiver of such right." See Pennycooke, 65 F.3d at 13.  Nonetheless, after advising McMillan of his right to testify, listening to Attorney Grella's thorough colloquy, and receiving McMillan's answer, the court noted we had no other questions for him, thereby expressing our satisfaction with counsel's conduct and the firmness of McMillan's waiver. (See 2/28/18 Trial Tr. 179:8-181:22).

unavailing.  Immediately after McMillan chose not to testify, the court asked

Attorney Grella if the defense had any witnesses; she stated—without objection

from McMillan—"We do not."  (See 2/28/18 Trial Tr. 182:1-4).  This exchange

occurred between 4:08 p.m. and 4:25 p.m. on February 28, 2018.  (See id. at 179:5,

188:17).  The court went on-the-record the next day at 8:55 a.m., (see 3/1/18 Trial

Tr. 1), at which time Attorney Grella notified the court outside the presence of the

jury that the defense intended to rest without calling any witnesses, (see id. at 7:1-

18).  She rested McMillan's case shortly after 9:00 a.m.  (See id. at 7:20-8:1).

McMillan did not raise any concerns to the court about Attorney Grella's actions

and nothing in the record indicates McMillan changed his mind about testifying.

We will deny McMillan's motion as to this claim because it is "clearly frivolous

based on the existing record."  See Booth, 432 F.3d at 545.[7]

---

[7] McMillan goes beyond his claim of ineffectiveness and raises the specter of
sabotage, suggesting Attorney Grella deliberately retaliated against him by not
preparing him to testify because he filed a bar complaint against her.  (See Doc. 162-
1 at 9-10).  The record is devoid of any evidence even suggesting counsel would
stoop to such conduct as payback for McMillan's tepid disagreement about motions
practice that prompted his complaint in the first place.  In fact, the court definitively
ruled before trial that "[n]o conflict of interest prevents Ms. Grella from
representing you.  Ms. Grella is prepared to communicate with you, to consult with
you, and to aid you."  (See 2/26/18 Pre-Trial Conf. Tr. 26:16-19); see also infra pp. 22.
Having witnessed Attorney Grella's zealous advocacy, and in light of the detailed
account of McMillan's unequivocal waiver, we reject his intimation of duplicity out
of hand.  Moreover, there is not a reasonable probability that his purported
testimony about personal drug use would have impacted the outcome of the
proceeding given the overwhelming evidence supporting the drug-trafficking
charges against him.  See Strickland, 466 U.S. at 694; see also infra pp. 16-17.

### C.      Sentencing Issues (Counts III, VII, and VIII)

The next few claims concern trial and appellate counsels' conduct *vis-à-vis* McMillan's sentencing exposure.  McMillan contends his attorneys were ineffective for failing to challenge his status as a career offender and his guidelines range of 360 months to life.  (See Doc. 162-1 at 11-14, 23).  Our court of appeals has held that "where defense counsel fails to object to an improper enhancement under the Sentencing Guidelines, counsel has rendered ineffective assistance."  See Jansen v. United States, 369 F.3d 237, 244 (3d Cir. 2004).  McMillan's first claim is frivolous; both attorneys explicitly argued against the career-offender designation.  (See Doc. 132 at 2; Doc. 137 at 3-4, 13-15); McMillan, 774 F. App'x at 769-72.  The court rejected their arguments, and our court of appeals affirmed.  See McMillan, 774 F. App'x at 771-72.

Regarding his guidelines range, McMillan believes his attorneys should have argued for a range of no more than 240 months—the statutory maximum for his convictions under 21 U.S.C. § 841(a)(1).  (See Doc. 162-1 at 12 (citing U.S.S.G. § 5G1.1(a) (U.S. SENT'G COMM'N 2016) ("Where the statutorily authorized maximum sentence is less than the minimum of the applicable guideline range, the statutorily authorized maximum sentence shall be the guideline sentence."))).  But McMillan overlooks the fact that Section 5G1.1(a) only applies when a court sentences a defendant on a single count of conviction, compare U.S.S.G. § 5G1.1(a), with U.S.S.G. § 5G1.2, and that his conviction under Section 924(c) carried a statutory maximum of life (with a statutory minimum of 25 years), see 18 U.S.C. § 924(c)(1)(C)(i) & (c)(1)(D)(ii).  The court accurately determined McMillan's

guidelines range of 360 months to life, and neither counsel can be deemed ineffective for failing to raise a meritless argument. See United States v. Sanders, 165 F.3d 248, 253 (3d Cir. 1999) (citations omitted).

Lastly, McMillan asserts the court misapplied an enhancement due to his conviction under 18 U.S.C. § 922(g). (See Doc. 162-1 at 23 (Count VIII)). He provides no explanation or supporting facts, but merely states: "Need to review guidelines Enhancement." (See id.) We find that this claim is baseless as well because McMillan's guidelines range properly turned upon the interplay between his status as a career offender and his Section 924(c) conviction. (See Doc. 131 ¶ 84 (citing U.S.S.G. §§ 4B1.1(c)(3), 5G1.2(e)); see also Doc. 143 at 1).

### D.    Sufficiency of the Evidence (Count IV)

McMillan argues trial and appellate counsel were ineffective for failing to challenge the sufficiency of the evidence on all counts. (See Doc. 162-1 at 15-19). He references the testimony of two government witnesses that purportedly show weaknesses in the government's case: (1) a detective who admitted he did not personally witness McMillan possess a handgun or sell drugs, (see 2/27/18 Trial Tr. 130:12-16), and (2) a lab technician who testified that only a portion of the substances seized during McMillan's arrest were tested, (see 2/28/18 Trial Tr. 80:13-83:7). Based upon this testimony, he suggests, in conclusory fashion, that "the Government [f]ailed to [p]roduce any evidence as to all the [e]ssential elements of the gun counts." (See Doc. 162-1 at 19).

McMillan's claims are baseless. Attorney Grella challenged the sufficiency of the evidence in her motion for judgment of acquittal pursuant to Federal Rule of

Criminal Procedure 29 after the government rested its case.  (See 2/28/18 Trial Tr. 182:24-185:1).  She argued the government had not proven beyond a reasonable doubt that McMillan possessed drugs with the intent to distribute them or that he possessed the firearm and used it in furtherance of a drug-trafficking crime.  (See id.)[8]  The court denied Attorney Grella's motion, emphasizing the substantial evidence of McMillan's guilt on the drug-distribution offenses[9] and the Section 924(c) charge.[10]  (See id. at 187:3-25).  While neither Attorney Grella nor Attorney Ulrich reiterated this argument in post-trial motion or on appeal, the court's detailed Rule 29 ruling evinces precisely why doing so would have been futile.  See also McMillan, 774 F. App'x at 769-70 (affirming conviction and reciting inculpatory facts).  Neither counsel was ineffective for failing to double down on this meritless argument.  See Sanders, 165 F.3d at 253 (citations omitted).

### E.    McMillan's Section 924(c) Conviction (Count V)

McMillan challenges his Section 924(c) conviction "[f]or a number of statutory and constitutional [r]easons."  (See Doc. 162-1 at 20).  He argues (1) the

---

[8] Attorney Grella did not address the Section 922(g) charge because that portion of the bifurcated trial had not yet occurred.

[9] "[T]he record is replete with evidence through phone calls, text messages, the prior conviction evidence, and particularly with respect to the counterfeit heroin and the heroin itself, the manner of packaging."  (See 2/28/18 Trial Tr. 187:8-12).

[10] "[T]here is DNA on the mask and gun that matches the defendant's DNA, the references in the telephone conversations, the fact that the firearm is stolen, the proximity of the firearm to the defendant, and that the defendant was in the vehicle, working in the vehicle or having access to the vehicle immediately prior to his apprehension, I believe that establishes proximity and proximity to the drugs in question."  (See 2/28/18 Trial Tr. 187:16-25).

government wrongfully attached the Section 924(c) charge to more than one predicate offense (*i.e.*, duplicity), effectively stripping the court of subject matter jurisdiction; and (2) his conviction violates the separation of powers doctrine under the United States Constitution.  (See id. at 20-21).  McMillan's claim is procedurally defaulted because he "neglected to raise [it] on direct appeal."  See Hodge v. United States, 554 F.3d 372, 378-79 (3d Cir. 2009) (noting that collateral review under Section 2255 is not a substitute for direct review); see also McMillan, 774 F. App'x at 769-72.  A defendant in these circumstances can avoid procedural default only "if he can prove either that he is actually innocent of the crime for which he was convicted, or that there is a valid cause for the default, as well as prejudice resulting from the default."  See Hodge, 554 F.3d at 379.  McMillan can prove neither.  As discussed *supra*, there is formidable evidence of McMillan's guilt on all counts.  See *supra* pp. 16-17.  He also cannot satisfy the "cause and prejudice exception" because the jury convicted him of possessing a firearm in furtherance of *all three* predicate offenses.  (See Doc. 122 at 3).[11]  We will deny McMillan's motion as to this claim.

---

[11] Moreover, if the government had charged, and the jury convicted, McMillan on three Section 924(c) counts—one for each predicate offense—his sentencing exposure would have increased because, at the time of his conviction, each additional count would have carried a 25-year mandatory minimum to be served consecutively.  See 18 U.S.C. § 924(c)(1)(C)(i) & (c)(1)(D)(ii) (2006); see also United States v. Andrews, 12 F.4th 255, 257 (3d Cir. 2021) (explaining the 2018 First Step Act's amendments do not apply to individuals sentenced before the Act's enactment) (citation omitted).

**F.      The Government's Plea Offer (Count VI)**

McMillan next asserts Attorney Grella was ineffective for failing to explain the government's 15-year plea offer and to adequately advise him on whether he should have accepted it.  (See Doc. 162-1 at 22).  The Sixth Amendment right to counsel "extends to the plea-bargaining process."  Lafler v. Cooper, 566 U.S. 156, 162 (2012).  Defense counsel is required to communicate the government's formal offers "to accept a plea on terms and conditions that may be favorable to the accused."  See Missouri v. Frye, 566 U.S. 134, 145 (2012).  Counsel must also provide their client "enough information to make a reasonably informed decision whether to accept a plea offer" or go to trial.  See United States v. Bui, 795 F.3d 363, 367 (3d Cir. 2015) (quoting Shotts v. Wetzel, 724 F.3d 364, 376 (3d Cir. 2013)) (cleaned up).

McMillan's allegation is "clearly frivolous based on the existing record."  See Booth, 432 F.3d at 545.  The 15-year plea offer was explained to McMillan on at least three occasions before trial.  First, months before trial, Attorney Grella provided McMillan a cover letter, a copy of the agreement, and a letter advising him that she thought "it was in his best interests to accept such a deal, whether it be that deal or one similar."  (See 2/26/18 Pre-Trial Conf. Tr. 17:1-20).  Attorney Grella informed the court that McMillan "declined that offer," (see id. at 17:10-11), and that he rejected all of the government's offers because he believed he was innocent and wanted to go to trial, (see id. at 18:3-8).  McMillan refused to change his mind even after Attorney Grella warned him "he would [likely] be a career offender under the guidelines due to his prior convictions."  (See id. at 17:25-18:2).  Second, the court reviewed all plea agreements with McMillan and Attorney Grella during an *ex parte*

portion of the pretrial conference.  (See id. at 7:17-18:8).  And third, immediately

before the start of trial, Attorney Grella—with McMillan at her side—again told the

court McMillan rejected the government's 15-year plea offer and requested that the

details of all the rejected plea offers be put on the record.  (See 2/27/18 Trial Tr.

87:14-22).  The government proceeded to summarize its plea negotiations with

McMillan, including the 15-year plea offer, and concluded by expressing its desire

"to make sure that the defendant is aware of what offers were made and that he is

knowingly rejecting them."  (See id. at 87:23-89:18).  The court asked McMillan if he

"agree[d] that was an accurate recitation of the facts," and he responded, "Yes."

(See id. at 89:22-24).  Attorney Grella cannot be faulted for her client's persistent

rejection of the government's 15-year plea offer.

### G.    Speedy Trial Act Issue (Count IX)

McMillan also argues counsel was ineffective for failing to raise a claim under

the Speedy Trial Act.  (See Doc. 162-1 at 24).  He states he "was arrested in August

of 2015 and went to trial in Feb[ruary] of 2018 for a minor drug possession offense."

(See id.)  He provides no additional explanation or supporting caselaw, making this

little more than a "vague and conclusory allegation[]."  See Thomas, 221 F.3d at 437

(citing Dawson, 857 F.2d at 928).  Nonetheless, we liberally construe his claim and

consider its merits due to McMillan's pro se status.

The Speedy Trial Act requires a defendant's trial to commence within 70

days of the filing of the indictment or the defendant's first appearance, whichever

occurs later.  See 18 U.S.C. § 3161(c)(1).  Certain periods of time are excluded when

computing this 70-day period, however, including "[a]ny period of delay resulting

from a continuance granted by any judge . . . on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." See id. § 3161(h)(7)(A).  A court must set forth its reasons for granting a continuance on the record.  See id.

In the matter *sub judice*, McMillan's first appearance was on January 7, 2016, and his trial commenced on February 27, 2018.  (See Docs. 10, 11, 149).  The court granted a total of 13 unopposed motions to continue trial during this time.  (See Docs. 24, 29, 36, 41, 44, 56, 65, 69, 71, 73, 75, 77, 80;[12] see also Doc. 85 (continuing trial with parties' consent because of case reassignment)).  Attorney Grella filed 12 of these motions on McMillan's behalf because he demanded a jury trial, (see 2/26/18 Pre-Trial Conf. Tr. 18:4-6), and he refused "to proceed to trial until [she] filed every motion he requested," (see id. at 19:8-10; see also id. at 12:6-14:10).  As a result, there were only 60 days that counted towards the Act's requirement between McMillan's first appearance and his trial.  McMillan is due no relief on this meritless argument. See Sanders, 165 F.3d at 253 (citations omitted).

---

[12] Even though McMillan does not explicitly challenge the court's continuance orders or their *ratio decidendi*, we find that the orders were proper because they sufficiently set forth the court's reasons on the record by referencing the respective motions.  (See, e.g., Doc. 24 (finding continuance warranted "after consideration of Defendant's Unopposed Motion to Continue Jury Selection and Trial"); see also United States v. Adams, 36 F.4th 137, 145 (3d Cir. 2022), cert. denied, 143 S. Ct. 238 (2022) ("[O]ur precedent affords district courts significant leeway in complying with § 3161(h)(7)(A)'s procedural requirements.").  We also find that the court's June 15, 2016 continuance order—which did not cite the Speedy Trial Act—still excluded time under the Act.  (See Doc. 36); see also United States v. Reese, 917 F.3d 177, 182 (3d Cir. 2019) (noting that "citing the Act or parroting [its] relevant provisions" is not necessary so long as the record reveals the court's reasoning) (citation omitted).

### H.     Substitution of Counsel (Count X)

McMillan next claims—again, without citing to evidence or caselaw—that the court erred by refusing to replace Attorney Grella after he filed a bar complaint against her and moved to dismiss her on that basis; he contends his complaint created a "conflict of interest." (See Doc. 162-1 at 24). This claim is procedurally defaulted because McMillan did not raise it on appeal. See Hodge, 554 F.3d at 379; see also McMillan, 774 F. App'x at 769-72. He also failed to advance a valid cause for the default, and he cannot show prejudice because the court determined the day before trial that he lacked good cause to replace Attorney Grella. (See 2/26/18 Pre-Trial Conf. Tr. 26:8-27:13 (citing United States v. Welty, 674 F.2d 185 (3d Cir. 1982)));[13] see also United States v. Gentry, 941 F.3d 767, 775-76 (5th Cir. 2019) (no abuse of discretion where court denied request for substitute counsel after defendant filed formal grievance against attorney). We will deny McMillan's motion as to this claim.

### I.     Admission of Prejudicial Evidence (Count XI)

In his penultimate issue, McMillan broadly contends he was denied a fair trial because of "arguments of counsel, the government[,] and the introduction of prejudicial evidence of other crimes and speculation of him being wanted for murder or rap." (See Doc. 162-1 at 25). He cites the "entire Trial Transcripts to support this claim." (See id.) Once again, this claim is procedurally defaulted, see

---

[13] The court also provided McMillan the option to proceed *pro se*, which he unequivocally declined: "I don't know the law to go *pro se*. . . . I don't want to represent myself . . . ." (See 2/26/18 Pre-Trial Conf. Tr. 28:18-19, 29:17-18).

Hodge, 554 F.3d at 379, and McMillan has not advanced any reasons to avoid the default.  His claim is also meritless.  Our court of appeals repeatedly has held that evidence of a drug-trafficking conviction may be admitted against a defendant to prove intent in a later trial drug-distribution trial.  See, e.g., United States v. Davis, 726 F.3d 434, 443 (3d Cir. 2013) (citing, *inter alia*, United States v. Lee, 573 F.3d 155, 166 (3d Cir. 2009)).  Here, the court properly admitted the government's evidence of McMillan's two drug-distribution convictions with an accompanying limiting instruction that the evidence was to be used only for the purpose of proving his intent to distribute controlled substances.  (See 2/27/18 Trial Tr. 84:18-86:18; 2/28/18 Trial Tr. 175:6-176:6); see also FED. R. EVID. 404(b)(2).  We will deny McMillan's motion as to this claim.

> **J.     Cumulative Error (Counts XIII and XIV)**

Finally, McMillan argues the cumulative effect of multiple errors warrants a new trial, and that the court's reversal of some counts of conviction creates a spillover effect onto other counts.  (See Doc. 162-1 at 25-26).  The court having rejected each of McMillan's claims individually, his assertion of cumulative error is unavailing.

**IV.**   **Conclusion**

For the foregoing reasons, we will deny McMillan's motion to vacate or set aside his sentence pursuant to 28 U.S.C. § 2255.  An appropriate order shall issue.

/S/ Christopher C. Conner
Christopher C. Conner
United States District Judge
Middle District of Pennsylvania

Dated:      March 6th, 2024